GEORGE BLAKISTONE, ET AL., RECEIVERS OF BELVE-
DERE BUILDING COMPANY, *vs.* THE STATE
OF MARYLAND AND MAYOR AND
AND CITY COUNCIL OF
BALTIMORE.

*Taxes*: *property under control of Court; duty of collectors;
receivers' liability. Equity: pleading and practice;
cases heard on bill and answer.*

When land or other property is under the control of a Court
of Equity, the ordinary statutory remedies for the enforce-
ment of taxes levied upon, or payable in respect of, such
property, are suspended and payment must be secured
through the power and authority of the Court.        p. 244

Although not so required by statute, it is the duty of the col-
lector to apply to the Court administering the property for
the payment of the penalty on the taxes due thereon, as
well as for the payment of the principal sum and interest
due.                                              pp. 244-245

If the collector fails to make such application, and the fund
is disbursed, the city and State are bound, and can not
recover the penalty from the receivers.              p. 245

Where a case is heard on petition and answer, the allegations
of facts contained in the answer must be taken as admitted.
                                                    p. 245

Where in the account in receivership and foreclosure pro-
ceedings, the account for taxes due as filed did not con-
tain any claim for penalty, and such an account was duly
ratified without any exception thereto by the State or city,
and the fund was disbursed in compliance therewith without
any objection, it was held that the city and State were bound

by the ratification of the account and could not recover from the receivers penalties that had not been claimed as due in the tax bills.                                        pp. 245, 246

*Decided January 11th, 1912.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and URNER, JJ.

*J. Southgate Lemmon* and *J. Wallace Bryan* (with whom were *Lemmon* and *Clotworthy* on the brief), for the appellants.

*Allan C. Girdwood* and *Samuel S. Field,* for the appellees.

PEARCE, J., delivered the opinion of the Court.

The Belvedere Hotel of Baltimore, owned and operated by the Belvedere Building Company, a corporation, was on February 10th, 1906, decreed by the Circuit Court of Baltimore City to be sold to satisfy a first mortgage thereon held by the Union Trust Company, trustee, and by the same decree, George Blakistone and Edgar G. Miller were appointed receivers to take charge of the property until sold. A second bill was filed by the same plaintiff, as trustee under a second mortgage, on February 14th, 1906, on this hotel, its furniture and equipment, and a decree was passed on the same day for the sale of the furniture and equipment. These two cases were consolidated and on March 10th, 1906, Lawrence Perin, a stockholder of the defendant corporation, filed a bill in the same Court, under Art. 23, secs. 264 and 264A. (being the insolvent law of Maryland), alleging the insolvency of the corporation, and that it owed about $24,-000 for overdue State and city taxes which it was unable to pay; praying that it be adjudged insolvent, and that it be dis-

solved, and its assets distributed to those entitled. On March 21, 1906, these two consolidated cases were consolidated with the last mentioned case of *Lawrence Perin* against the same defendant, and the same receivers were appointed in the three consolidated cases with all their previous powers, and all such additional powers as could be conferred on receivers of a corporation under the insolvent law, but without prejudice to the rights of the Union Trust Company under the two cases first consolidated. The hotel was subsequently sold July 2nd, 1907, and this sale was ratified August 20th, 1907, and possession delivered to the purchaser September 1st, 1907. This sale was not made by the receivers, the decree above mentioned authorizing them to sell subject to the mortgage of the Union Trust Company, having been reversed in *Union Trust Company* v. *Belvedere Building Co.,* 105 Md. 507, and the sale was made under another proceeding for foreclosure of that mortgage. The receivers possession of the property therefor began March 21st, 1906, and terminated Sept. 1st, 1907. The taxes for 1906 were paid by the receivers under an order of Court, and on January 1st, 1907, the State and city taxes for 1907 became due and payable. On December 20th, 1910, the State of Maryland and the City of Baltimore filed a petition in these consolidated cases alleging that the taxes for 1907 had not been entirely paid; that on December 16th, 1910, $22,499.23 was paid on account thereof, the total being $23,176.90, leaving still due and unpaid $677.57, which balance represented penalties and other charges made against said receivers on account of their failure to pay said taxes within the time prescribed by law, and that said receivers refused to pay the same on the ground that said charges could not be lawfully made against them as receivers, and the petitioners prayed an order directing the receivers to pay said balance. An order *nisi* was passed on this petition and the receivers filed their answer January 7th, 1911, alleging that at no time between January 1st, 1907, and August 20th, 1907 (the date of ratification of said sale) had they in their possession as

receivers, sufficient funds of the defendant corporation to pay taxes for 1907 levied upon the property, and they were never ordered or directed to pay the same, and no application for payment was ever made until December 20th, 1910; that sometimes subsequent to August 1st, 1907, they offered to pay the taxes levied for 1907 with accrued interest thereon, but the city collector demanded the further sum of $677.57 alleged to be for penalties for non-payment of said taxes on or before May 1st and July 1st, 1907, respectively; and being advised that said penalties were not legally chargeable they refused to pay them, or the bills of which they were part, and that the said taxes for 1907 were not paid until December 16, 1910, on which day, by an agreement with the city collector, they paid said taxes in full with interest reserving however the right to the *petitioners* to submit the liability of the receivers for these penalties to the Court for its determination. Further alleging, the sale of the property and assets of the defendant corporation by the Union Trust Company above mentioned and its ratification August 20th, 1907. Further alleging that on December 24th, 1907, the auditor filed in said Court "The receivers' third account, prepared as of July 1st, 1907, showing a net balance in their hands of $8,169.45," credited there in to the Union Trust Co. to be applied to the 1907 taxes on the hotel property, the receivers being chargeable with the taxes from January 1st, 1907, to July 1st, 1907, the date of the sale of the hotel under foreclosure proceedings. That on the same day the auditor filed an account in said foreclosure proceedings crediting the Union Trust Co. with $9,104.14, "as the proportion of State and city taxes for 1907 allowed the purchaser to July 2nd, 1907, and charging it with $8,169.45 to be credited on account of 1907 State and city taxes, *contra,* accrued to July 2nd, 1907," both of which accounts having been ratified and distribution made thereunder, "by reason of which distribution the receivers have not in their hands any funds belonging to the defendant wherewith to pay said penalties." The matter was heard

on this petition and answer under an agreement of counsel filed December 17, 1910—that the liability of the receivers for said sum of $677.57 should be submitted to the Circuit Court of Baltimore City for its determination, and on August 1st, 1911, a decree was passed requiring said receivers to pay the same, and this appeal is from that order.

The appellants contend that this case is governed by the *Casualty Company's Case,* 82 Md. 535, in which this Court held that no interest should be allowed on the claim for taxes or on any of the other claims filed against the insolvent company.

The question was disposed of in a very few words, the Court saying: "It is not easy, if indeed it be possible, to place upon a consistent basis many of the decisions in which interest has been allowed or disallowed. Perhaps some of the numerous claims might, in strictness, be entitled to an allowance of interest under ordinary circumstances; but it does not appear that the amounts asserted to be due, have been wrongfully withheld by the Casualty Company. The failure to pay, as far as we can see, has been the result of the company's insolvency. A penalty or damages in the way of interest ought not, therefore, to be added to the sums actually due."

It does not appear from the opinion in that case whether there was any claim made for a statutory penalty as well as for interest on the taxes, but there is a natural inference from the fact that no mention is made of *such a penalty,* as well as from the whole tenor of the language we have quoted, that there was no claim made for any statutory penalty. We think it quite clear that the Court, in using that language had not in mind any such penalty.

In the paragraph of the opinion immediately preceding that part we have quoted, the Court said, "We think no *interest* should be allowed on the claim for taxes or on any other claim filed against the insolvent company. Whilst not precisely analogous, the case of *Hutchinson* v. *Liverpool,*

*London,* and *Globe Ins.* Co., 153 Mass. 143, supports this conclusion."

In the *Casualty Company's Case* all the claims are grouped together and considered upon the same basis as to the allowance of interest, indicating that the Court had in mind, only the allowance of interest, as a matter within the discretion of the tribunal deciding the whole matter in issue, a question which CHIEF JUDGE BUCHANAN said in *Newson* v. *Douglass,* 7 H. & J. 453, "has been found to be a subject not susceptible of the application of any fixed and general rule of law, each case depending upon its own peculiar circumstances."

We have carefully examined the case in 153 Mass. *supra,* and cannot perceive that it is, in any respect, analogous to the case now before us. That was an action brought by a policy holder against the defendant corporation, upon a policy insuring the plaintiff against loss by fire. The head note of that case relating to interest is as follows: "Interest is not allowable on a particular loss under an insurance policy, where the loss is not liquidated, until demand has been made for its payment, although arbitration and limitation clauses, and proofs of loss, have been waived, and a builder's certificate of the amount of loss presented." The Court in its opinion said: "We think the ruling in relation to *interest* was correct. It is not easy to place upon a consistent basis many of the decisions in which interest has been allowed or disallowed. But in this case it does not appear that the amount to which the plaintiff became entitled under the policy was payable at a fixed time after the loss occurred, or upon a certain event which had to take place, or that the amount has been wrongfully withheld by the defendant or that the sum due was liquidated, or that until the bringing of the action a demand had been made for its payment." From the above citation, it is quite clear that the Supreme Judicial Court of Massachusetts was not dealing with interest in any other light than as discretionary with the Court, and that that case was cited in the *Casualty Company's*

*Case,* only with reference to such interest, and not to a statutory penalty.

Again, in the closing sentence of the passage we have quoted from the opinion in the *Casualty Company's Case,* we think it is equally clear that the Court merely intended to characterize the claim for interest as *in the nature* of a penalty for mere detention of money due, and that it had no reference to a statutory penalty for delinquency in payment after a date fixed for the incuring of such penalty upon taxes already overdue. Consequently we do not think that case governs the present. It does appear, moreover, from the opinion in that case, page 565—that the taxes were overdue when the company's assets passed into the hands of the receivers, a circumstance which materially discriminates that case from the present, and which affords a further reason for not accepting that as satisfactory authority for this contention of the appellants. The appellants also contend, earnestly and ably, that our statutes imposing penalties upon delinquent taxpayers were never designed by the lawmakers to apply to receivers of insolvent corporations in process of dissolution, and for this they cite *Central Trust Co. v. New York Central & H. R. R. Co.,* 110 Md. 256, where in the course of the opinion, the Court said: "An insolvent corporation in the hands of and operated by a receiver was not in the minds of the framers of the statute when providing for the enforcement of taxes from what may be termed a going corporation."

In that case there was no penalty sought to be enforced so far as the report discloses. The railroad corporation was insolvent and had been operated for several years by a receiver appointed in proceedings for foreclosure of certain mortgages. He had in his possession funds derived from the operation of the railroad sufficient to pay certain corporation taxes due, and the attorney general filed a petition in the receivership case for an order directing their payment by the receiver. The receiver contended that the corporation alone was answerable for these taxes, or at least that only

such funds as should remain in his hands, after payment of
the mortgages, could be applied to those taxes. His argument
was that as proceedings to enforce payment of those taxes
were provided by the act which imposed them,. all other
remedies were excluded, and the Supreme Court so held;
but the Court of Appeals reversed this decision, and ordered
payment by the receiver, holding, that while those taxes in
a strict technical sense were not liens on the property
in the receivers' hands, when first levied, yet under the cir-
cumstances of insolvency, etc., the State had a paramount
right to collect them from earnings of the property in the
receivers' hands. It will thus be seen that the language
cited by the appellant from the opinion in that case was
used, not to restrict, but to enlarge and extend the applica-
tion of the ordinary methods for enforcing the payment of
taxes due by insolvent corporations in the hands of receivers.
We do not think, however, that it is necessary to express any
opinion upon this contention of the appellants.

The appellants further contend that as the collector did not
at any time during the receivership, make application to the
Court to order payment of these taxes, and took no steps to
secure payment thereof, or of the penalty now claimed until
long after the receivership terminated, and the disburse-
ment under the order of the Court of all money in their
hands, the State and city must be taken to have acquiesced
in the situation, and can not now claim these delinquency
penalties.

We think this is sound, and upon that principle this case
should be determined.

When land or other property is under the control of a
Court of equity, it has long been settled that the ordinary
statutory remedies for the enforcement of taxes levied upon,
or payable in respect of, such property, are suspended, and
payment must be secured through the power and authority
of the equity Court. In such cases, while there is no statute
declaring what is the duty of the collector, our decisions do
plainly declare that there is a duty imposed upon him in

the premises, and in *County Commissioners* v. *Clarke,* 36 Md. 219, that duty is stated as follows: "His plain and obvious duty was to apply to the Court for the payment of the taxes due, and as they had full power, the presumption is that they would have directed their payment through their agents, the trustees, in a manner that would have occasioned no unnecessary delay, while at the same time the rights of all parties interested would have been properly protected."

If the collector, in the case before us, or the State and city had in 1907 upon the refusal of the receivers to pay these penalties—*then* filed the petition which they waited to file until December 17th, 1910, not only would this question of penalties have been then decided, but the State and city would have received whatever amount was determined to be due three years earlier than they did receive the taxes and interest which have been paid. The receivers recognized the duty imposed upon them by law when they offered to pay the amount *they were advised by counsel* to be due, but the State and city failed to discharge through their agent, the collector, the duty which the Court said in 36 Md., *supra,* rested upon him, to apply to the Court for the payment of the penalties claimed, as well as the principal and interest offered, and they should abide by the consequences of their own conduct.

But there is another ground which supports this conclusion. This case being heard on petition and answer, the allegations of fact contained in the answer must be taken as admitted and among these allegations are the following: That on December 24th, 1907, two accounts were filed by the auditor, one in the receivership case, and one in the foreclosure proceedings by the Union Trust Company, in which two accounts these taxes for 1907, *without including these penalties now claimed,* were apportioned between the receivers and the purchasers of the property under the foreclosure proceedings, as of the day of sale, July 2nd, 1907;

both of which accounts have been ratified in due course, without exception being filed thereto by either the State or the city, and that complete distribution has been made thereunder without objection on the part of any party whatever.

In *Marine Bank* v. *Heller,* 94 Md. 213, under an auditor's account distributing certain funds derived from various sources, and in the hands of receivers of an insolvent corporation, a certain sum was allowed for taxes upon the real estate of said corporation, which account was ratified without exception being taken to the allowance of these taxes from that fund. Subsequently the real estate of the corporation was sold, and an account was stated distributing the proceeds thereof among the preferred stockholders of the company, that stock being a statutory lien on the real estate and certain other property. The general creditors excepted to this account, alleging that the taxes had been erroneously allowed in the first account, and should now be deducted from the proceeds of sale of the real estate and be distributed among the general creditors. But it was held that the order ratifying the first account, from which no appeal was taken, constituted an adjudication of all the questions that might have been raised thereunder, and that the general creditors could not claim that the taxes were not properly payable from the fund distributed in that account.

The Court cited in support of that conclusion, *Beloit* v. *Morgan,* 7 Wall. 619; *State* v. *Brown,* 64 Md. 199; *Trayhern* v. *Colburn,* 66 Md. 278; *Albert* v. *Hamilton,* 76 Md. 309; *Barrick* v. *Horner,* 78 Md. 258, and *Robers, Brown & Co.* v. *Citizens' Nat. Bank,* 93 Md. 613, and said: "It was certainly within the power of the appellees to file objections to the allowance of these taxes in account A upon the grounds now urged. If they had done so and the decision had been in their favor, it would have protected them unless reversed on appeal. If adverse to them they could have brought it here for review. They have had their day in Court."

We think that principle is conclusive in this case, and require the reversal of an order appealed from.

> *Order reversed, and petition dismissed, the appellees to pay the costs above and below.*