908 A.2d 674

**Leefen QUILLENS et al.**

v.

**Kathleen V. PARKER et al.**

**No. 1592, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Sept. 29, 2006.

David J. McDonnell, Towson, for appellant.

Brian C. Parker, Kyriakos Marudas (David H. Cohen, W. Scott Tinney, on brief), Baltimore, Allen Tochterman, on brief, Kingsville, for appellee.

Panel DEBORAH S. EYLER, BARBERA and LAWRENCE F. RODOWSKY, (retired, specially assigned), JJ.

RODOWSKY, J.

In the northeast quadrant of West North Avenue and McCulloh Street in Baltimore City is a carwash. During the times relevant to this appeal, the owner of the carwash property was the appellant, Leefen Quillens (Mr. Quillens). As security for a loan, he executed a deed of trust on the carwash site, the rights under which are held by the other

appellant, Rapid Funding Corporation (Rapid Funding). Rapid Funding, on September 25, 2003, instituted foreclosure, under a power of sale, in Case No. 24–03–003193 in the Circuit Court for Baltimore City. The lender's agent made affidavit that the debt was at least $1 million. At a public sale held on January 30, 2004, Rapid Funding bought in for $650,000.

The contest before us arises because Mr. Quillens also failed to pay real property taxes. The appellees are the holders of tax sale certificates on various parcels or lots, as described in the property assessment accounts, that are within the area encumbered by the deed of trust.[1] All of the lots are in Ward 13, Section 8, Block 3423. When appellees brought actions in the Circuit Court for Baltimore City to foreclose the rights of redemption as to the various tax account lots, appellants opposed foreclosure on jurisdictional grounds. Aggrieved by the rejection of their arguments, appellants brought this appeal.

There are three appellee interests, Kathleen V. Parker (Ms. Parker), Geuk Lee and Chun Ja Lee (the Lees), and the Mayor and City Council of Baltimore (the City). Ms. Parker brought Action No. 24–C–03–004785 on June 30, 2003, in order to foreclose the right of redemption in Lots 13 through 16, respectively, known as 2303, 2305, 2307, and 2309 McCulloh Street. Ms. Parker had acquired certificates for each of these lots at a tax sale on May 13, 2002. On March 20, 2000, the Lees brought Action No. 24–C–00–001372 to foreclose the right of redemption in Lot 11A, known as 1130 West North Avenue. The certificate of sale for 1130 West North Avenue describes the "Lot Size" as "improvement only." The Lees

---

1. The record in the mortgage foreclosure action contains a copy of the deed of trust. Its terms state that the description of the property encumbered thereby is set forth in an Exhibit A to that instrument. Exhibit A is omitted from the copy of the deed of trust filed in the foreclosure action.

No party has questioned the premise that all of the tax account lots at issue here are included in the portion of Block 3423 that was encumbered by the deed of trust.

acquired their certificate at a tax sale on May 17, 1999.[2] By Civil Action No. 24–C–03–003229, filed May 6, 2003, the City sought to foreclose the right of redemption in Lot 12, known as 2301 McCulloh Street. The City had bought in that property at a tax sale on May 14, 2001. By Action No. 24–C–03–003142, filed May 2, 2003, the City sought to foreclose the right of redemption in Lot 17, known as 2311 McCulloh Street. The City had bought in that property at the tax sale of May 14, 2001.

The four above-described tax cases were consolidated with and into Rapid Funding's action to foreclose the deed of trust, and the orders for this appeal have caused to be brought up to this Court the original records in all five consolidated actions. Only in the two actions by the City had the circuit court entered an order foreclosing the right of redemption prior to the noting of these appeals.

Additional facts will be stated in the discussion of the respective questions presented, which we have reordered and set forth below.

1. "Did the lower court err in refusing to consider that challenge to the court's jurisdiction which is based on the fact that, because one of the certificates fails to describe any conveyable parcel of real property, there is no jurisdiction and no remedy available under Title 14, Subtitle 8 of the Tax–Property Article?"

2. "Did the lower court err in finding valid those certificates, the redemption price of which included amounts for which the City had earlier purchased certificates not used, within the statutorily prescribed time frame, in a foreclosure proceeding?"

---

**2.** The land for the parcel having a street address of 1130–1136 West North Avenue is assessed under an account for Ward 13, Section 8, Block 3423, Lot 9. The City bought in the certificate for Lot 9 at a tax sale on September 15, 2004. If there was any action to foreclose a right of redemption with respect to the property described in the tax account for Lot 9, it is not an action that was consolidated as part of this appeal.

3. "Did the lower court err in refusing to require that the holders of certificates present their claims against the proceeds of sale in the mortgage foreclosure case?"

4. "Did the lower court err in entering judgments foreclosing rights of redemption in two cases after appellants had filed their notice of appeal?"

## Overview

By virtue of Maryland Code (1986, 2001 Repl.Vol., 2005 Cum. Supp.), § 14–844(b) of the Tax–Property Article (TP),[3] each of the parcels involved here was in the posture described in A. Gordon, IV, *Gordon on Maryland Foreclosures* § 8.1, at 363 (4th ed.2004), where the author states:

"After the title bring-to-date ... is completed it will sometimes appear that the real property taxes have not been paid. This is not a problem **unless:**

1. the property has actually been sold in a tax sale, and
2. the statutory waiting period has run, and
3. the tax sale purchaser has filed suit to foreclose the equities of redemption, and
4. served the petition on all interested parties, and
5. the property ... is about to pass to the purchaser, **extinguishing the mortgage lien.**"

Under the tax sale statute, an owner in the above-described position, who chooses not to redeem the property from the certificate holder at the amount determined by the holder, has two options by way of response to a petition to foreclose the

---

**3.** Section 14–844 provides, with respect to the final order in an action to foreclose the right of redemption, as follows:

"(b) *Effect of judgment in favor of plaintiff—In general.*—If the court finds for the plaintiff, the judgment vests in the plaintiff an absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring before the date of the judgment and encumbrances on the property, except taxes that accrue after the date of sale and easements of record and any other easement that may be observed by an inspection of the property to which the property is subject."

*See also Bell v. Myers,* 28 Md.App. 339, 343, 345 A.2d 105, 108 (1975).

right of redemption. "These are a challenge to the tax sale itself and a challenge to the amount required to redeem." *Dawson v. Prince George's County,* 324 Md. 481, 488, 597 A.2d 952, 955 (1991). *See* TP § 14–842, discussed *infra,* and § 14–829. Appellants have chosen to assert that the tax sales are void. Nevertheless, "[t]he right to redeem ... continue[s] until finally barred by decree of the circuit court in which the foreclosure proceeding is filed." TP § 14–833(b). Here, we shall hold that the appeals in the Lees and Parker cases are premature, for want of a final judgment. Consequently, there will be a window of opportunity in those two actions, after the filing of this opinion and before the entry of a final judgment in the circuit court, for appellants to consider whether the redemption option is preferable. In the two City cases, we shall hold that there is a final judgment of foreclosure, which we shall affirm.

## I

Appellants argue that "the lower court erred in determining that it had *in rem* jurisdiction with respect to a tax sale certificate which does not describe a parcel of real property." This argument is directed only to Lot 11A, the Lees case. There are two notices of assessment for 1130 West North Avenue. One, for Lot 9, values only the land, and the other, for Lot 11A, values only the improvements. The thrust of the argument is that Lot 11A contains no real property. Consequently, appellants submit, citing *Holland v. Billingsley,* 208 Md. 635, 119 A.2d 380 (1956), that the advertisement of the tax sale contained an inadequate description, thereby voiding the tax sale. Further, appellants argue, any tax sale deed from the collector to the Lees would be required to use the advertisement description of the property and similarly would be defective, so that there can be no remedy in the Lees' action to foreclose the right of redemption. Appellees respond by pointing out that § 1–101(cc) defines " '[r]eal property,' " for purposes of the Tax–Property Article, to mean "any land *or* improvements to land." (Emphasis added). Appellees further point out that appellants have no standing to object on

behalf of the Lees, who are the parties seeking, without objection, to enforce rights under the tax sale certificate for Lot 11A.

 We do not reach these questions on this appeal. There is no final judgment, because there is no judgment foreclosing the right of redemption. On August 25, 2005, the circuit court entered an order fixing the redemption amount for Lot 11A at $41,812.72, and set a per diem rate of interest. That order further provided

> "that if the said redemption amount is not paid within sixty (60) days of the date of this Order ... judgment shall be entered in favor of [the Lees] foreclosing the right of redemption in [Lot 11A]."

The action to foreclose the right of redemption has not been terminated, because the right to redeem continues until foreclosed. Indeed, the order itself shows that it was not intended to be final. *See Makovi v. Sherwin–Williams Co.,* 311 Md. 278, 533 A.2d 1303 (1987); *see also Edwards Sys. Technology v. Corbin,* 379 Md. 278, 285, 841 A.2d 845, 849 (2004).

In opposition to dismissal of their appeal, appellants submit that, under *Scheve v. McPherson,* 44 Md.App. 398, 408 A.2d 1071 (1979), there is a final judgment.[4] *Scheve* was an appeal from an order under what is today Maryland Rule 2–535(a) (the 30–day revisory power) that had been exercised to reopen a judgment foreclosing the right of redemption from a tax sale. Factually, the circuit court based its ruling on a telephone call from the attorney for the owner to the attorney for the certificate holder, made two days before the expiration of the time for redemption, in which the owner's intent to redeem was communicated. This Court held that, although a reopening of a judgment, by exercise of the revisory power, ordinarily is not a final judgment, the order in *Scheve* constituted a final judgment.

---

4. Appellants make this argument in the Parker case, where that appellee has expressly argued the lack of a final judgment.

This Court reasoned that there was "no further opportunity for appellants [the certificate holders] to protest or to prosecute their claim." 44 Md.App. at 404, 408 A.2d at 1075. Striking of the foreclosure order, thereby "reviving a right of redemption that could then be exercised merely by paying the amounts fixed by the court, was the one and final act that adjudicated the rights of the parties and, save for appellate review, terminated the justiciable controversy among them." *Id.* (footnote omitted). In a footnote, this Court further explained that, to have concluded otherwise, would have permitted the owners effectively "to *preclude* an appeal by simply not applying for such a further order" and allowing the right to redeem to "continue indefinitely[.]" *Id.* n. 5, 408 A.2d at 1075 n. 5.

*Scheve* is distinguishable from the instant matter because there the aggrieved parties were the certificate holders whose opportunity for appellate review of the striking of their judgment of foreclosure could have languished in a legal limbo were that order held to be interlocutory. Here, the appellants are aggrieved by the circuit court's ruling rejecting their defenses and permitting the foreclosure action to proceed. Appellants can obtain appellate review of that ruling by appealing a final judgment foreclosing redemption, if there is no redemption in the interim. They are not, however, permitted to obtain appellate review of an interlocutory ruling merely setting the redemption amount. Appellants will have to decide, without an appellate advisory opinion, whether to redeem or to take the risk that a judgment foreclosing the right of redemption will be affirmed.

With respect to the Parker case, the arguments which appellants make on the merits are similar to those which they make in the City case, discussed in Part II below. But the order appealed from in the Parker case is even more remote from a final judgment than the order appealed from in the Lees case. The August 26, 2005 order appealed from in the Parker case established the validity of the tax sale certificates issued to Ms. Parker. It further provided that Ms. Parker may proceed with her case "and upon submission of an

affidavit of compliance that is satisfactory to this Court, may obtain a judgment foreclosing the right of redemption" on Lots 13 through 16. The order for appeal was noted on September 22, 2005. Our analysis with respect to the appealability of the order in the Lees case is applicable here.

For these reasons we shall dismiss the appeals in the cases of Ms. Parker and of the Lees.

## II

■ Appellants next argue that the "lower court erred in finding valid certain tax sale certificates reciting a minimum purchase price which includes amounts which are not taxes and for which liens do not attach to the pertinent property." We need consider this argument only with respect to the City cases, in which orders foreclosing the right of redemption were entered on October 12, 2005.

Appellants' argument ultimately rests on TP § 14–833(c). That section, and its relevant context, read as follows:

"(a) *Time for filing generally.*—Except as provided in subsections (e) and (f) of this section, at any time after 6 months from the date of sale a holder of any certificate of sale may file a complaint to foreclose all rights of redemption of the property to which the certificate relates.

"(b) *Continuation of right to redeem.*—The right to redeem shall continue until finally barred by decree of the circuit court in which the foreclosure proceeding is filed.

"(c) *Void certificate—Time limitations.*—(1) The certificate is void unless a proceeding to foreclose the right of redemption is filed within 2 years of the date of the certificate of sale.

. . . .

"(d) *Same—Cessation of holder's right, title, and interest.*—(1) If a certificate is void under subsection (c) of this section, then any right, title, and interest of the holder of the certificate of sale, in the property sold shall cease and all money received by the collector on account of the sale

shall be deemed forfeited, and shall be applied by the collector on the taxes in arrears on the property."

Appellants' argument, which applies to both Lots 12 and 17, can best be illustrated by using actual numbers. We shall use the Lot 17 numbers. On May 15, 1995, the City conducted a tax sale at which it bought in Lot 17 for $3,298.81, the then total of the liens on that property. On May 14, 2001, the City again included Lot 17 in a tax sale at which time the total lien claim was $9,331.71, including the $3,298.81. The City bought in the property at the gross amount. The City's action to foreclose the right of redemption on Lot 17 was brought within two years from the May 14, 2001 tax sale. Appellants contend not only that, under § 14–833, the tax sale certificate from the 1995 sale became void, but also that the lien was lost for the taxes due at the 1995 sale, which, in the case of Lot 17, would be $3,298.81. Under this argument, the City is said to be an unsecured creditor as to $3,298.81 for Lot 17.

Extending that concept, appellants argue that the inclusion of the pre–1995 debt in the amount required to redeem certificates issued to the City in the 2001 sale renders those certificates entirely void. In the words of appellants,

"[o]nce a certificate held by the City is void as the result of passage of time, it cannot offer the pertinent property for sale at a price which includes the amount recited in such certificate and thereupon issue a new certificate purporting to pass unto its purchaser a lien securing payment of such amount. Such new certificate is void because it is not contemplated, permitted, described or authorized by the Statute."

Appellants' Brief at 17.

■ The argument has no merit. It is a "settled principle that laws enacted for the collection of general taxes must be interpreted with very great liberality; consequently, construction should not be undertaken with an eye to defeating the legislation, but with both eyes focused on giving it force, if reasonably possible." *Surratts Assocs. v. Prince George's County,* 286 Md. 555, 566, 408 A.2d 1323, 1329 (1979). The

plain language of § 14–833(c) voids only the certificate issued to the holder, not the lien for the benefit of the public fisc in the amount of the indebtedness. "All [that the City] thus far has received is a certificate of purchase which, unless sold or assigned [Maryland Code (1957), Article 81] (§ 89) [now TP § 14–825], authorizes, within a statutorily prescribed time frame, foreclosure of redemption rights [Maryland Code (1957), Article 81] (§ 88) [now TP § 14–824(c) ] if payment by the owner is not in the meantime made." *Id.* at 567, 408 A.2d at 1329.

The first lien for real property taxes for the years of delinquency is not dependent on a valid tax sale certificate. The lien is created by statute. TP § 14–804(a) provides that "*[a]ll* unpaid taxes on real property shall be, until paid, liens on the real property in respect to which they are imposed from the date they became or become payable." (Emphasis added). TP § 14–805(a) provides: "From the date property tax on real property is due, liability for the tax and a 1st lien attaches to the real property in the amount of the property tax due on the real property." The statutory definition of tax closes the circuit. " 'Tax' means any tax, or charge of any kind due to the State or any of its political subdivisions . . . that by law is a lien against the real property on which it is imposed or assessed." TP § 14–801(c)(1).

For these reasons, the City held valid tax certificates on Lots 12 and 17 as to which the owner's rights to redeem, for the amounts of all unpaid taxes and charges, as determined by the circuit court, properly have been foreclosed.

### III

Appellants argue that "the lower court erred by not requiring the holders of tax sale certificates to present their claims against the proceeds of the mortgage foreclosure sale." We consider this argument in the context of the two City cases.

TP § 14–842 states the applicable rules.

"In any proceeding to foreclose the right of redemption, it is not necessary to plead or prove the various steps, procedure and notices for the assessment and imposition of the

taxes for which the property was sold or the proceedings taken by the collector to sell the property. The validity of the procedure is conclusively presumed unless a defendant in the proceeding shall, by answer, set up as a defense the invalidity of the taxes or the invalidity of the proceedings to sell or the invalidity of the sale. A defendant alleging any jurisdictional defect or invalidity in the taxes or in the proceeding to sell, or in the sale, must particularly specify in the answer the jurisdictional defect or invalidity and must affirmatively establish the defense."

■ Appellants could not have raised their above-quoted defense in their answers to the City's complaints to foreclose the rights of redemption, which were filed in early May 2003, because the mortgage foreclosure action was not instituted until September 25, 2003. Appellants, however, did not raise the defense by any amended answer and, indeed, did not raise it at any time in the City cases. The contention that the remedy of a certificate holder is limited to filing a claim against the proceeds of the mortgage foreclosure sale was raised by the appellants in the Lees case in July 2005, in opposition to a motion by the Lees for the entry of a judgment foreclosing the right of redemption. Even if we assume that, in this consolidated proceeding, the issue is preserved for appellate review in the City cases, because it was raised in the case of the Lees, the argument fails on the merits.

■ The principle on which appellants rely is an equitable one, involving property which is in the "custody" of a court exercising general equity jurisdiction. Here, appellants say that under this *custodia legis* principle, the actions to foreclose the rights of redemption cannot proceed, because the property is in the custody of the court exercising mortgage foreclosure jurisdiction. *Custodia legis* was explained by this Court in *Voge v. Olin*, 69 Md.App. 508, 518 A.2d 474 (1986):

"The reason for the rule forbidding the interference of a third party with the possession of the court is that 'when a court acquires jurisdiction of goods, chattels, or money, in one case, the orderly process of the court requires that it shall be permitted to determine the rights of the parties in

that case without interference or interruption of a conflicting jurisdiction or a separate and distinct action or proceeding.' *Kluckhuhn v. Ivy Hill Association*, 55 Md.App. 41, 45, 461 A.2d 16[, 19] (1983), *aff'd*, 298 Md. 695, 472 A.2d 77 (1984) (quoting *Outerbridge Horsey Co. v. Martin*, 142 Md. 52, 55, 120 A. 235[, 236] (1923))."

*Id.* at 512, 518 A.2d at 476. Appellants' position is that an orderly resolution of the issues involving title to parcels within the carwash site is through the mortgage foreclosure action.

There is authority recognizing the *custodia legis* principle in the mortgage foreclosure context, and we do not understand the appellees to dispute the principle, but only its application here. We shall review the authority chronologically.

*County Comm'rs of Prince George's County v. Clarke*, 36 Md. 206 (1872), arose on a creditors' bill.[5] There, a circuit court appointed trustees who sold the property pursuant to a decree passed in November 1865. In September 1870, the tax collector sold the property at tax sale, while exceptions to the trustees' sale were still pending. The Court of Appeals held that

"[u]nder these circumstances it was not admissible for a collector to step in, and by a summary distress and sale divest the court of its jurisdiction, and transfer the question of title to another tribunal. His plain and obvious duty was to apply to the court for the payment of the taxes due, and as they had full power, the presumption is, that they would have directed their payment through their agents, the trustees, in a manner that would have occasioned no unnecessary delay, while at the same time the rights of all interested would have been properly protected."

*Id.* at 219.

*Clarke* was applied in *Gould v. City of Baltimore*, 58 Md. 46 (1882), involving property held in a testamentary trust that

---

**5.** "A creditors' bill, in its usual sense, is a proceeding, under [former] statutes, by the creditors of a deceased debtor, to sell his real estate for the payment of his debts." E. Miller, Jr., *Equity Procedure As Established in the Courts of Maryland* § 373, at 451 (1897) (footnote omitted).

was supervised by the equity court. Pursuant to the testator's direction, certain property was sold, but it was subject to a special assessment, the collection of which the purchaser contended was barred by a statute of limitations. The Court held that limitations had not run, because the tax collector could not have enforced the special assessment by sale, reasoning that, if a sale by the collector had been sought, it would have been enjoined to protect the purchaser in the general equity proceedings. *Id.* at 52.

*Hebb v. Moore,* 66 Md. 167, 7 A. 255 (1886), involving a "trust estate," similarly applies the *Clarke* rationale in overruling a limitations defense to a claim for the payment of real estate taxes out of the trust estate. *See also Blakistone v. State,* 117 Md. 237, 244, 83 A. 151, 153 (1912) (recognizing *custodia legis* principle in holding that tax collector could not assert against receiver, individually, claim for tax delinquency penalties due from insolvent corporation where collector had not filed claim in receivership proceedings).

An injunction, at the instance of the assignee of the power of sale in a mortgage, against a collector of real estate taxes who was threatening a tax sale, was affirmed in *Rouse v. Archer,* 149 Md. 470, 131 A. 753 (1926), under the authority of *Blakistone, Clarke,* and other cases. In *Dampman v. Litzau,* 261 Md. 196, 274 A.2d 347 (1971), the property was in *custodia legis* because a trustee had been appointed to sell the property in lieu of partition in kind. During that period, a tax collector, who had sold the property, but whose judgment foreclosing the right of redemption had been set aside for inadequate notice, continued to press for foreclosure. The Court of Appeals held that the circuit court's "control over the property should not be disturbed without its consent." *Id.* at 202–03, 274 A.2d at 351.

More recently, in *Voge v. Olin,* 69 Md.App. 508, 518 A.2d 474, the purchaser at a tax sale sought to prevent ratification of a mortgage foreclosure sale of the property by a court-appointed "trustee." *Id.* at 511, 518 A.2d at 475–76. The tax sale certificate holders argued that the property was in the

custody of the court in the action to foreclose the right of redemption. This Court rejected that contention because no trustee, who files a bond with the court, is involved in a foreclosure of the right of redemption action. We observed "*Rouse, Hebb* and *Clarke* clearly support[ed] the concept that where the court has appointed a trustee in a mortgage foreclosure action[,] any further action in a previously filed tax foreclosure proceeding would be prohibited." *Id.* at 519, 518 A.2d at 480.

In the instant matter, we shall assume that an individual authorized to exercise the power of sale in a mortgage or deed of trust is a "court-appointed trustee" within the meaning of the cases reviewed above. See *Bouldin v. Reynolds,* 58 Md. 491, 495 (1882), *Powell v. Hopkins,* 38 Md. 1, 12 (1873), and *Berry v. Skinner,* 30 Md. 567, 574 (1869), all referring to an individual holding such a power as a "trustee."

Under the equitable maxim that " 'he who seeks equity must do equity,' " the rule of the *Clarke* line of cases is not available to appellants. See *Canaj v. Baker,* 391 Md. 374, 390, 893 A.2d 1067, 1077 (2006) (quoting *Preske v. Carroll,* 178 Md. 543, 550–51, 16 A.2d 291, 295 (1940)); 2 J. Pomeroy, *Equity Jurisprudence* § 393 (5th ed.1941). Applying that maxim, the Court in *Canaj* stated "that where it is admitted (or proven) that there are delinquent taxes due, in order to challenge the holding or ratification of the tax sale or to seek to vacate a judgment of the foreclosure of the equity of redemption, the taxpayer must first pay to the Collector or the certificate holder the total sum of the taxes, interest, penalties and expenses of the sale that are due." *Id.* at 391, 893 A.2d at 1077.

To the same effect see *Simms v. Los Angeles County,* 35 Cal.2d 303, 316, 217 P.2d 936, 944 (1950) ("It is the established rule, based on the maxim that he who seeks equity must do equity, that a property owner seeking to challenge the validity of a tax must pay or offer to pay the portion of the tax to which the taxing authority is entitled in equity and good conscience."); *Harding v. City of Decatur,* 226 Ga. 474, 475–

76, 175 S.E.2d 507, 508 (1970) ("It is well settled in this state that ... '[o]ne seeking relief from excessive tax levies, but admitting, either expressly or by necessary implication, that he owes part of the tax covered by such executions, must pay or offer to pay the amount of the taxes admitted to be due, in order to obtain the relief sought.' "); *McClelland v. Polk County*, 225 Iowa 177, 178, 279 N.W. 423, 424 (1938) ("[B]efore appellant can have a court of equity set aside a tax sale for delinquent and unpaid taxes, she must pay or offer to pay the delinquent and unpaid taxes against the property involved."); *Fish v. France*, 71 N.D. 499, 510, 2 N.W.2d 537, 543 (1942) ("[A]s a condition to relief in equity, the applicant must pay or tender the amount of taxes properly chargeable against the property.").

In the instant matter, taxes remain unpaid on Lots 12 and 17. Clearly, appellants' position is that the unpaid taxes, as of the earlier tax sale, lost their first lien status and, thus, any priority, and became an unsecured debt when the certificate from the earlier sale expired. In addition to this admission of tax delinquency by the appellants, we have held in Part II, *supra*, that the taxes due at the earlier sale were properly brought forward and included in the redemption amount under the later tax sale certificate. Appellants have indicated no interest in redeeming. Appellants have not tendered payment of any of the unpaid taxes. Under these circumstances, appellants have not "done equity" in their suggestion that the unpaid taxes be submitted as a claim, having no priority, in the mortgage foreclosure sale. The deed of trust foreclosure sale on the carwash site produced a delinquency of hundreds of thousands of dollars. Consistent with their positions that (1) there is no lien for at least some, if not all, of the unpaid taxes and (2) that the tax sale certificates are thereby voided, appellants have offered no assurance that they would pay the delinquent taxes as part of the accounting in the mortgage foreclosure case in which, under appellants' theory, the debt under the deed of trust would enjoy priority over some, if not all, of the unpaid taxes.

Consequently, appellants would not be entitled to have the court in the mortgage foreclosure case issue an injunction, under the *custodia legis* theory, enjoining the foreclosure of the right of redemption in the tax cases.

## IV

■ Appellants' remaining argument is that "the lower court erred in foreclosing rights of redemption in two cases after notice of appeal had been filed." The two cases are those in which the City is plaintiff.

On September 22, 2005, the appellants noted appeals in the two City cases from orders entered on August 24, 2005. Those orders set the redemption amounts, and were not final judgments. The argument now presented is that those premature orders for appeal ousted the circuit court of jurisdiction to enter the final judgments of October 12, 2005, which were appealed on October 26, 2005.

■ Once an appeal of a circuit court judgment has been entered, the circuit court is "prohibited from exercising its jurisdiction in a way that would affect the subject matter of the appeal or appellate proceeding." *County Comm'rs of Carroll County v. Carroll Craft Retail, Inc.*, 384 Md. 23, 45, 862 A.2d 404, 418 (2004); *In re Emileigh F.*, 355 Md. 198, 202–03, 733 A.2d 1103, 1105 (1999). However, "[a]s a premature order of appeal is of no force and effect, and confers no jurisdiction on the appellate court, it obviously does not divest the trial court of jurisdiction to enter final judgment in the case." *Makovi v. Sherwin–Williams Co.*, 311 Md. at 283, 533 A.2d at 1305 (citing *Stewart v. State*, 282 Md. 557, 573, 386 A.2d 1206, 1214 (1978)). Further, because the rulings prematurely appealed from were not the rulings later entered as final judgments, Maryland Rule 8–602(d) is inapplicable.

**APPEALS IN CIRCUIT COURT FOR BALTIMORE CITY CASES NO. 24–C–00–001372 AND 24–C–03–004785 DISMISSED.**

70

JUDGMENTS OF THE CIRCUIT COURT FOR BALTI-MORE CITY IN CASES NO. 24–C–03–3229 AND 24–C–03–003142 AFFIRMED.

COSTS IN ALL CASES TO BE PAID BY THE APPEL-LANTS.