923 A.2d 15

**Leefen QUILLENS, et. al.**

**v.**

**Richard W. MOORE, Jr.**

**No. 114, Sept. Term, 2006.**

Court of Appeals of Maryland.

May 10, 2007.

Reconsideration Denied June 12, 2007.

98

David J. McDonnell, Towson, for petitioners.

Brian C. Parker (Parker, Dumler & Kiely LLP, Baltimore, Allen Tochterman, Kingsville), Kyriakos P. Marudas, Asst. City Solicitor (George A. Nilson, City Solicitor, Baltimore City Dept. of Law), all on brief, for respondent.

Argued before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (Retired, specially assigned), JJ.

BATTAGLIA, J.

In the case *sub judice,* Petitioner, Leefen Quillens, owned eight contiguous pieces of property in Baltimore City upon which he failed to pay real property taxes. At subsequent tax sales, Baltimore City was required to "buy in and hold" two of the properties pursuant to Section 14–824(a) of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.),[1] and Kathleen Parker purchased four of the properties pursuant to Section 14–817 of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.).[2] Certificates of sale, often times called tax certificates, were issued to both the City and Parker, reflecting that the properties were sold for the total amount of

---

**1.** Section 14–824(a) of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.), provides in part: "[T]he governing body of a county or other taxing agency shall buy in and hold any property in their respective counties offered for sale for nonpayment of taxes for which there is no private purchaser."

**2.** Section 14–817 of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.), entitled "**Sale at public action,**" state in pertinent part:
(a) *Conduct of sale.*—(1)(i) The sale shall be held on the day and at the place stated in the notice by advertising.
(ii) The sale shall be held in the county in which the land to be sold is located.
(iii) If the sale cannot be completed on that day, the collector shall continue the sale as determined by the collector and announced to the bidders at the sale until all property included in the sale is sold.
(2) All sales shall be at public auction to the person who makes the highest good faith accepted bid, in fee or leasehold, as the case may be.

taxes due on the property, including those secured by prior, void tax certificates.

Both the City, in Cases No. 24–C–03–003229 and 24–C–03–003142, and Parker in Case No. 24–C–03–004785, filed complaints in the Circuit Court for Baltimore City to foreclose Quillens' right of redemption.[3] Quillens filed answers to the complaints, alleging that the tax sales were invalid because the tax certificates issued thereon purported to sell the properties for taxes secured by previously issued void tax certificates. Subsequently, Quillens moved to consolidate the cases against him with the Rapid Funding Corporation foreclosure case,

---

**3.** The highest bidder at the tax sale, or the governing body of the taxing authority if there are no private bidders, does not acquire title to the property "purchased," but instead, is issued a "certificate of sale," or tax certificate. The tax certificate entitles the holder to file a complaint to foreclose the property owner's right of redemption; the right of redemption is the right of the property owner to remit the required payments under Section 14–828 of the Tax–Property Article, Maryland Code (19 86, 2001 Repl.Vol.) and terminate any interest the tax certificate holder has in the property. Section 14–828(a) provides the "redemption amount" that the property owner must pay to extinguish the certificate holder's interest in the tax sale property. *See* Maryland Code (1986, 2001 Repl.Vol.), § 14–828(a) of the Tax–Property Article ("If the property is redeemed, the person redeeming shall pay the collector: (1) the total price paid at the tax sale for the property together with interest; (2) any taxes, interest, and penalties paid by any holder of the certificate of sale; (3) any taxes, interest, and penalties accruing after the date of the tax sale.").

If the tax certificate holder forecloses the right of redemption within the time period identified in Sections 14–827 and 14–833 of the Tax–Property Article, the holder acquires "absolute and indefeasible title" in the property. *See* Maryland Code (1986, 2001 Repl.Vol.), § 14–827 of the Tax–Property Article ("The owner or other person that has an estate or interest in the property sold by the collector may redeem the property at any time until the right of redemption has been finally foreclosed under the provisions of this subtitle."); Maryland Code (1986, 2001 Repl.Vol.), § 14–833 of the Tax–Property Article ("[A]t any time after 6 months from the date of sale a holder of any certificate of sale may file a complaint to foreclose all rights of redemption of the property to which the certificate relates.... The certificate is void unless a proceeding to foreclose the right of redemption is filed within 2 years of the date of the certificate of sale."). If the certificate holder does not foreclose the right of redemption within two years of the date of the certificate of sale, the certificate expires and its holder loses all "right, title, and interest" in the property. Maryland Code (1986, 2001 Repl.Vol.), § 14–833(d) of the Tax–Property Article.

which was granted.[4] On August 30, 2005, the Circuit Court entered orders finding that the tax certificates issued to Parker, and consequently the tax sales thereon, were valid, and setting the redemption amount for the City properties. From these orders, Quillens noted an appeal. Subsequently, the Circuit Court entered an order in the City cases foreclosing Quillens' right of redemption, from which he filed an amended notice of appeal. The Court of Special Appeals dismissed the appeal in the Parker case and affirmed the Circuit Court's foreclosure of Quillens' right of redemption in the City cases. We granted Quillens' petition for writ of certiorari,[5] which posed three questions for our review:

1. Did the Court of Special Appeals err in determining that the notices of appeal from the trial court's August '05 orders were premature?

2. Did the trial court and the Court of Special Appeals err by finding that certain tax sale certificates were valid even though each certificate recited a purchase price which includes amounts which were not taxes and for which liens do not attach to the pertinent property?

3. Did the Court of Special Appeals err (a) in determining that appellants were required to tender payment of taxes

---

**4.** In addition to the cases involving Parker and Baltimore City, cases involving Paul Wye Nochumowitz, and Geuk and Chun Ja Lee also were consolidated: the Nochumowitz case was an action for ejectment or to secure unpaid ground rent payments for 2309 McCulloh Street, and the Lee case was an action to foreclose the right of redemption on "Improvements Only," 1130 West North Avenue. Quillens noted an appeal to the Court of Special Appeals in the Lee case, contending that the tax certificate issued to Lee was invalid because it did not describe the parcel of real property; the argument was rejected by the court. Nochumowitz was not a party to the appeal before the Court of Special Appeals. As Quillens' petition for writ of certiorari presented no issues regarding the Lee and Nochumowitz cases, and no cross-petitions were filed, we do not address them.

**5.** Rapid Funding Corporation, the mortgagor of the properties, initiated foreclosure under its deed of trust; subsequently, at a foreclosure sale, it purchased the properties. The foreclosure has not been finalized, and Leefen Quillens remains the owner of the properties. Both Quillens and Rapid Funding petitioned this Court for relief and are collectively referred to as Quillens.

and (b) by finding as a fact that appellants indicted no interest in redeeming?

*Quillens v. Moore,* 396 Md. 12, 912 A.2d 648 (2006).

Because we hold that Quillens' appeal in the Parker case was premature and that he was required to tender payment of the deficient taxes to challenge the tax sales, we affirm the Court of Special Appeals. To provide guidance to the Circuit Court when the Parker case is remanded, we address Quillens' argument that the tax sales were invalid because the certificates issued thereon recited a purchase price including amounts which were included on previously issued invalid tax certificates.

## I. Introduction

Quillens owned eight contiguous parcels of property in Baltimore City, located at 1128 and 1130 West North Avenue, and 2301, 2303, 2305, 2307, 2309, and 2311 McCulloh Street, at which he operated a car wash. In 1990, as security for a loan, a deed of trust on the properties was issued to Signet Bank/Maryland; the rights under the deed of trust were subsequently assigned to Rapid Funding.

Between 1994 and 2004, Quillens failed to pay some of the real property taxes on those parcels,[6] and the following six tax sales, relevant to this appeal, resulted:

---

6. On 1130 West North Avenue, Quillens failed to pay $53,212.81 in real property taxes, interest, and costs during Fiscal Years 1998, 1999, 2002, 2003, and 2004. On the same property, for "Improvements Only," he failed to pay taxes, interest, and costs amounting to $16,055.38 during Fiscal Years 1996, 1997, and 1998.

With respect to 2303 McCulloh Street, Quillens failed to pay $643.34 in real property taxes, interest, and costs during Fiscal Year 1994. On the same property, he failed to pay $2,447.12 in real property taxes, interest, and costs during Fiscal Years 1997, 1998, 1999, 2000, and 2001. Regarding 2305 McCulloh Street, Quillens failed to pay $1,642.51 in real property taxes, interest, and costs during Fiscal Years 1997, 1998, 1999, 2000, and 2001. On 2307 McCulloh Street, Quillens failed to pay $475.09 in real property taxes, interest, and costs during Fiscal Years 1994 and 1995. On the same property, he failed to pay $1,155.73 in real property taxes, interests, and costs during Fiscal Years 1997, 1998, 1999, 2000, and 2001. On 2309 McCulloh Street, Quillens

*A. 2303 McCulloh Street (Ward 13, Section 08, Block 3423, Lot 013)*

2303 McCulloh Street was sold at a tax sale on May 15, 1995 to "TCA 96 L.P. & Sun Bank" for $643.34, the amount of deficient real property taxes, interest, and costs for Fiscal Year 1994. Subsequently, the property was sold at a tax sale on May 15, 2000; no third party bid upon the property, and the City bought into and held the property for $1,443.57, the amount of deficient real property taxes, interest, and costs due for Fiscal Years 1997, 1998, and 1999. In 2002, Parker purchased the property at a tax sale for $2,447.12, the amount of the unpaid real property taxes, interest, and costs for Fiscal Years 2000 and 2001, along with the amount secured by the void May 2000 tax certificate.

*B. 2305 McCulloh Street (Ward 13, Section 08, Block 3423, Lot 014)*

2305 McCulloh Street was sold at a tax sale on May 17, 1999; no third party bid on the property, and the City bought into and held the property for $485.48, the amount of deficient real property taxes, interest, and costs due for Fiscal Years 1997 and 1998. In 2002, Parker purchased the property at a tax sale for $1,642.51, the amount of unpaid real property taxes, interest, and costs for Fiscal Years 1999, 2000, and 2001, along with the amount secured by the void May 1999 tax certificate.

---

failed to pay $5,069.44 in real property taxes, interest, and costs during Fiscal Years 1994, 1998, 1999, 2000, and 2001.

With respect to 2301 McCulloh Street, Quillens failed to pay $11,743.76 in real property taxes, interest, and costs, during Fiscal Years 1992, 1993, 1994, 1998, 1999, and 2000. On 2311 McCulloh Street, Quillens failed to pay $9,331.71 in real property taxes, interest, and costs during Fiscal Years 1994, 1998, 1999, and 2000.

Baltimore City's Fiscal Year begins July 1 and ends the following June 30.

*C. 2307 McCulloh Street (Ward 13, Section 08, Block 3423, Lot 015)*

2307 McCulloh Street was sold at a tax sale on May 13, 1996, to "FUNB as Custodian for FUNDCO" for $475.09, the amount of deficient real property taxes, interest, and costs for Fiscal Years 1994 and 1995. Subsequently, the property was sold at a tax sale on May 15, 2000; no third party bid on the property, and the City bought into and held the property for $570.23, the amount of deficient real property taxes, interest, and costs due for Fiscal Years 1997, 1998, and 1999. In 2002, Parker purchased the property at a tax sale for $1,155.73, the amount of real property taxes, interest, and costs owed for Fiscal Years 2000 and 2001, along with the amount secured by the void May 2000 tax certificate.

*D. 2309 McCulloh Street (Ward 13, Section 08, Block 3423, Lot 016)*

2309 McCulloh Street was sold at a tax sale on May 15, 1995; no third party bid on the property, and the City bought into and held the property for $1,164.18, the amount of deficient real property taxes, interest, and costs for Fiscal Year 1994. In 2000, at another tax sale, no third party bid on the property and the City bought into and held that property for $3,449.21, the real property taxes, interest, and costs owed for Fiscal Years 1998 and 1999 along with the amount secured by the void 1995 tax certificate. In 2002, Parker purchased the property at a tax sale for $5,069.44, the amount of real property taxes, interest, and costs owned for Fiscal Years 2000 and 2001, along with the amount secured by the void 2000 tax certificate.

*E. 2301 McCulloh Street (Ward 13, Section 08, Block 3423, Lot 012)*

2301 McCulloh Street was sold at a tax sale on May 15, 1995; no third party bid on the property, and the City bought into and held the property for $4,114.70, the amount of deficient real property taxes, interest, and costs for Fiscal Years 1992, 1993, and 1994. In 2001, at another tax sale, no third

party bid on the property, and the City bought into and held the property for $11,743.76, the amount of real property tax deficiencies, interest, and costs for Fiscal Years 1998, 1999, and 2000, along with the amount secured by the void May 1995 tax certificate.

*F. 2311 McCulloh Street (Ward 13, Section 08, Block 3423, Lot 017)*

2311 McCulloh Street was sold at a tax sale on May 15, 1995; no third party bid on the property, and the City bought into and held the property for $3,298.81, the amount of deficient real property taxes, interest, and costs for Fiscal Year 1994. In 2001, at another tax sale, no third party bid on the property, and the City bought into and held the property for $9,331.71, the amount of real property tax deficiencies, interest, and costs due for Fiscal Years 1998, 1999, and 2000, along with the amount secured by the void May 1995 tax certificate.

Subsequent to the tax sales, both the City and Parker filed timely complaints in the Circuit Court for Baltimore City to foreclose the right of redemption on the properties pursuant to Sections 14–833 and 14–835 of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.):[7] on May 2, 2003, the

---

**7.** Section 14–833 of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.), provides in part:

(a) *Time for filing generally.*—Except as provided in subsections (e) and (f) of this section, at any time after 6 months from the date of sale a holder of any certificate of sale may file a complaint to foreclose all rights o f redemption of the property to which the certificate relates. (b) *Continuation of right to redeem.*—The right to redeem shall continue until finally barred by decree of the circuit court in which the foreclosure proceeding is filed.

(c)(1) *Void certificate—Time limitations.*—The certificate is void unless a proceeding to foreclose the right of redemption is filed within 2 years of the date of the certificate of sale.

Section 14–835 of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.), states in relevant part:

(a) A person shall file a complaint in the circuit court for the county in which the land is located, that states:

(1) the fact of the issuance of the certificate of sale;

(2) a description of the property in substantially the same form as the description appearing on the certificate of tax sale and, if the person

City filed complaints with respect to 2301 and 2311 McCulloh Street (Case No. 24–C–03–003229 and No. 24–C–03–003142); on July 3, 2003, Parker filed a complaint with respect to 2303, 2305, 2307, and 2309 McCulloh Street (Case No. 24–C–03–004785). Quillens filed answers to the complaints, alleging that the Circuit Court did not have jurisdiction because the tax certificates issued pursuant to the tax sales purported to sell the properties for taxes secured by previously issued void tax certificates.

On November 4, 2003, upon Quillens' motion, the Circuit Court ordered that the Parker, City, Lee, and Nochumowitz cases be consolidated with the Rapid Funding case. On August 30, 2005, the Circuit Court issued an order that Parker's tax certificates, and consequently the tax sales thereon, were valid.[8] The same day, the Circuit Court also issued

---

chooses, any description of the property that appears in the land records;

(3) the fact that the property has not been redeemed by any party in interest;

(4) a request for process to be served on the defendants named in the complaint;

(5) a request for an order of publication directed to all parties in interest in the property;

(6) a request that the court pass a judgment that forecloses all rights of redemption of the defendants and any other person having any interest in the property;

(7) a description of the amount necessary for redemption including the amount paid out at the tax sale; and

\* \* \*

(b) The certificate of sale issued by the collector to the purchaser or a photostatic copy of the certificate of sale shall be attached to the complaint and shall be made part of the complaint.

8. The Order provided:

On June 30, 2003, the Plaintiff, Kathleen V. Parker, filed a Complaint to foreclose the right of redemption on four tax sale certificates. The case filed by the Plaintiff was captioned *Kathleen V. Parker v. Leefen Quillens, et. al.,* and assigned Case # 24–C–03–004785/FR (the "Parker Case"). The Parker case was subsequently consolidated for purposes of trial with the case captioned *Richard W. Moore, Jr. v. Leefen Quillens,* (Case # 24-0-03–003193/FR.) and with several other cases (the "Consolidated Cases");

The Defendant, Leefen Quillens, filed an Answer in the Parker Case on September 9, 2003, and thereafter made numerous motions in

orders setting the redemption amounts in the City cases: the properties located at 2301 and 2311 McCulloh Street could be redeemed for $22,184.85 and $18,025.69 respectively.[9] On

---

open court, that raised various issues related to the validity of the tax sale certificates;

After hearing testimony, evidence and argument regarding the issues raised in the Answer and the motions, it is,

HEREBY ORDERED, this 26th day of August, 2005, by the Circuit Court for Baltimore City, that the following tax sale certificates
2303 McCulloh Street, Block 3423, Lot 013 (Certificate # 155467)
2305 McCulloh Street, Block 3423, Lot 014 (Certificate # 155468)
2307 McCulloh Street, Block 3423, Lot 015 (Certificate # 155469)
2309 McCulloh Street, Block 3423, Lot 016 (Certificate # 155470)
sold by the Mayor and city Council to the Plaintiff, Kathleen Parker, on May 13, 2002 are hereby established by this Court to be valid and the defendant's various motions and averments as to the validity of the certificates are hereby overruled and denied;

IT IS FURTHER ORDERED THAT, the Plaintiff, Kathleen Parker, may proceed with the Parker Case, and upon submission of an affidavit of compliance that is satisfactory to this Court may obtain a judgment foreclosing the right of redemption on the above properties; and

IT IS FURTHER ORDERED THAT, this Order shall be deemed a separate Order from any other Orders that are entered in any of the other Consolidated Cases.

9. The Order regarding 2301 McCulloh Street provided:

Having reviewed the filings and proceedings concerning the real property known as [2301 MCCULLOH] ST., Lot Size: 61–10 X 41–4 (being known as Ward 13, Section 08, Block 3423, Lot 012 on the Tax Rolls of the Director of Finance), it is this 24th day of August, 2005, by the Circuit Court for Baltimore City

**ORDERED** that Defendant, Leefen Quillens, may redeem the above property for the amount of *$22,184.85* if redeemed by *8/24/2005*, with an additional per diem cost of *$5.79* thereafter, and

**ORDERED** that Plaintiff is permitted to proceed with this action if Defendant fails to redeem the property within thirty (30) days of the date of this order.

 The Order with respect to 2311 McCulloh Street stated:

Having reviewed the filings and proceedings concerning the real property known as 2311 MCCULLOH ST., Lot Size: 34–9 X 62–7 (being known as Ward 13, Section 08, Block 3423, Lot 017 on the Tax Rolls of the Director of Finance), it is this 24th day of August, 2005, by the Circuit Court for Baltimore City

**ORDERED** that Defendant, Leefen Quillens, may redeem the above property for the amount of *$18,025.69* if redeemed by *8/24/2005*, with an additional per diem cost of *$4.60* thereafter, and

September 21, 2005, Quillens noted an appeal to the Court of Special Appeals with respect to the August 30th orders. No further action was taken with respect to the Parker case, but on October 12, 2005, the Circuit Court entered a judgement foreclosing the right of redemption on the City properties from which Quillens noted a timely appeal to the Court of Special Appeals.

Before the Court of Special Appeals, Quillens argued that the Circuit Court erred in finding that the tax sales were valid because the tax certificates issued thereon purported to sell the properties for taxes secured by previously issued void tax certificates.[10] Quillens also argued that the Circuit Court erred in foreclosing the right of redemption in the City cases after he had filed a notice of appeal.

Conversely, Parker and Baltimore City argued that the August 30, 2005 orders were not appealable, contending that they did not constitute final judgments because they did not

---

**ORDERED** that Plaintiff is permitted to proceed with this action if Defendant fails to redeem the property within thirty (30) days of the date of this order.

**10.** Before the Court of Special Appeals, Quillens presented four additional arguments: that the Circuit Court erred by not requiring the holders of the tax sale certificates to present their claims against the proceeds of a mortgage foreclosure sale which occurred in 2004; that the Circuit Court erred in determining that it had *in rem* jurisdiction with respect to a tax sale certificate which did not describe a parcel of real property; that the tax certificates issued to Parker for 2303, 2307, and 2309 McCulloh Street were void because at the time of the tax sale, the City possessed valid certificates for those properties from a prior tax sale, citing *Prince George's Homes v. Cahn*, 283 Md. 76, 389 A.2d 853 (1978); and that Circuit Court should have required the tax sale certificate holders to present their claims against the proceeds of the mortgage foreclosure sale initiated by Rapid Funding because under the *custodia legis* principle, the actions to foreclose the rights of redemption are subordinate to the custody of the court exercising mortgage foreclosure jurisdiction. *In custodia legis* means "[i]n the custody of the law," Black's Law Dictionary 783 (8th ed.2004). Quillens' argued with respect to *custodia legis* that, because there was a mortgage foreclosure action filed in the Circuit Court exercising general equity jurisdiction, any further action in the tax sale proceedings was prohibited. These arguments were rejected by the panel, and they were not presented in Quillens' petition for writ of certiorari.

determine and conclude the actions to foreclose the rights of redemption. With respect to the amended notice of appeal filed September 21, 2005 in the City cases, the City argued that the original notice of appeal did not divest the Circuit Court of its jurisdiction to enter the order foreclosing the right of redemption in the City properties. Parker and the City also asserted that the tax sales were valid, and that the Circuit Court did not err in refusing to issue an injunction requiring them to present their claims as part of the mortgage foreclosure sale.

The intermediate appellate court affirmed in a reported opinion. *Quillens v. Parker*, 171 Md.App. 52, 908 A.2d 674 (2006). With respect to the Parker case, the court concluded that Quillens' appeal from the August 30, 2005 order establishing the validity of the tax certificates should be dismissed because it was not from a final judgment:

> There is no final judgment, because there is no judgment foreclosing the right of redemption. On August 25, 2005, the circuit court entered an order fixing the redemption amount for Lot 11A at $41,812.72, and set a per diem rate of interest. That order further provided
>
>> "that if the said redemption amount is not paid within sixty (60) days of the date of this Order ... judgment shall be entered in favor of [the Lees] foreclosing the right of redemption in [Lot 11A]."
>
> The action to foreclose the right of redemption has not been terminated, because the right to redeem continues until foreclosed. Indeed, the order itself shows that it was not intended to be final.

*Id.* at 59, 908 A.2d at 678. With respect to the City cases, the court found that the tax sales were valid and that Quillens was required to remit the unpaid property taxes in order to challenge the tax sales:

> The plain language of § 14–833(c) voids only the certificate issued to the holder, not the lien for the benefit of the public fisc in the amount of the indebtedness. . . .

The first lien for real property taxes for the years of delinquency is not dependent on a valid tax sale certificate. The lien is created by statute. TP § 14–804(a) provides that "*[a]ll* unpaid taxes on real property shall be, until paid, liens on the real property in respect to which they are imposed from the date they became or become payable." (Emphasis added). TP § 14–805(a) provides: "From the date property tax on real property is due, liability for the tax and a 1st lien attaches to the real property in the amount of the property tax due on the real property." The statutory definition of tax closes the circuit. " 'Tax' means any tax, or charge of any kind due to the State or any of its political subdivisions ... that by law is a lien against the real property on which it is imposed or assessed."

For these reasons, the City held valid tax certificates on Lots 12 and 17 as to which the owner's rights to redeem, for the amounts of all unpaid taxes and charges, as determined by the circuit court, properly have been foreclosed.

\* \* \*

Under the equitable maxim that " 'he who seeks equity must do equity,' " the rule of the *Clarke* line of cases is not available to appellants. Applying that maxim, the Court in *Canaj [v. Baker and Division Phase III,* 391 Md. 374, 893 A.2d 1067 (2006) ] stated "that where it is admitted (or proven) that there are delinquent taxes due, in order to challenge the holding or ratification of the tax sale or to seek to vacate a judgment of the foreclosure of the equity of redemption, the taxpayer must first pay to the Collector or the certificate holder the total sum of the taxes, interest, penalties and expenses of the sale that are due."

\* \* \*

In the instant matter, taxes remain unpaid on Lots 12 and 17. Clearly, appellants' position is that the unpaid taxes, as of the earlier tax sale, lost their first lien status and, thus, any priority, and became an unsecured debt when the certificate from the earlier sale expired. In addition to this admission of tax delinquency by the appellants, we have

held in Part II, *supra,* that the taxes due at the earlier sale were properly brought forward and included in the redemption amount under the later tax sale certificate. Appellants have indicated no interest in redeeming. Appellants have not tendered payment of any of the unpaid taxes. Under these circumstances, appellants have not "done equity" in their suggestion that the unpaid taxes be submitted as a claim, having no priority, in the mortgage foreclosure sale.

*Id.* at 62–63, 67–68, 908 A.2d at 680, 682–83 (citations omitted).

## II. Discussion

█ In *Scheve v. Shudder, Inc.,* 328 Md. 363, 614 A.2d 582 (1992), we provided an overview of the tax sale process and the foreclosure of a right of redemption pursuant to the tax sale statute: [11]

Title 14 of the Tax–Property article provides county governments a means of collecting property taxes that are in arrears. In *Simms v. Scheve,* 298 Md. 1, 467 A.2d 499 (1983), we noted that, under the tax sale statute, "for a tax sale to be effective substantial compliance with the statute is required; [i]n this regard, the prescription of the statute is clear and simple." We then described the basic steps of the tax sale process. We said that under the tax sale statute

"[u]npaid taxes on real estate constitute a lien on that property. Generally, within two years from the date taxes become in arrears the jurisdiction's collector must sell the land. Notice of the proposed sale must be given to the owner at least thirty days before the property is advertised for sale and the owner is notified that if he does not pay the taxes within thirty days, the property will be sold. After the sale is properly advertised, the property is sold at public auction.

---

**11.** There are no relevant substantive differences between the tax sale statute applied in *Scheve,* Section 14–808 *et. seq.,* of the Tax–Property Article, Maryland Code (1986, 1992 Cum.Supp.), and the statute applicable in this case, Section 14–808, *et. seq.,* of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.).

The purchaser of the property is given a certificate of sale which includes a description of the property, the amount for which the property was sold, and information as to the time in which an action to foreclose the owner's right of redemption must be brought. The owner may redeem the property at any time until the right of redemption has been finally foreclosed by paying the required sum to the collector, who transfers the money to the purchaser in exchange for the tax sale certificate.

[The statute] define[s] the purchaser's ability to foreclose the right of redemption. These provisions are to be 'liberally construed as remedial legislation to encourage the foreclosure of rights of redemption by suits in the [circuit] courts and for decreeing of marketable titles to property sold by the collector.' The holder of the certificate of sale may file [a complaint] to foreclose the owner's right of redemption after [six months] from the date of the sale.... The [complaint] must be filed within two years or the certificate is void. The owner may redeem the property at any time until the right of redemption has been finally foreclosed.

The purchaser initiates the foreclosure proceeding in the [circuit] court by filing a [complaint] and attaching the certificate of sale issued by the collector....."

*Id.* at 369–70, 614 A.2d at 585–86, quoting *Simms,* 298 Md. at 3–4, 467 A.2d at 500 (citations omitted). If there are no third party purchasers to bid on the property at a tax sale, the governing body of the taxing authority "shall buy in and hold" the property, acquiring a tax certificate and the "same rights and remedies as other purchasers, including the right to foreclose the right of redemption." Maryland Code (1986, 2001 Repl.Vol.), Section 14–824(a), (c), (d) of the Tax–Property Article. Once a complaint to foreclose the right of redemption is filed, the property owner can "challenge ... the tax sale itself [or] ... the amount required to redeem." *Dawson v. Prince George's County,* 324 Md. 481, 488, 597 A.2d 952, 955 (1991). Here, Quillens is challenging the validity of the tax sales to Parker and Baltimore City, asserting that the tax

certificates issued thereupon were invalid and consequently that the Circuit Court did not have jurisdiction.

Quillens argues that the Court of Special Appeals erred in determining that the notice of appeal from the Circuit Court's August 2005 orders was premature, contending that a decision validating the tax certificates or setting the redemption amount is immediately appealable. Quillens also argues that after his amended notice of appeal was filed on September 12, 2005, the Circuit Court was divested of its jurisdiction and could not enter its order foreclosing the right of redemption on the City properties. Quillens also argues that the Court of Special Appeals erred in finding that he was required to tender payment for the deficient real property taxes in order to challenge the tax sales, alleging that the court misapplied *Canaj, Inc. v. Baker,* 391 Md. 374, 893 A.2d 1067 (2006), which he contends only applies to parties seeking affirmative post-foreclosure relief in a court of general equity; rather, Quillens asserts that he is challenging the jurisdiction of the Circuit Court. Quillens' final contention is that the Court of Special Appeals erred in finding that the tax sales were valid because the tax certificates issued thereon included taxes secured by previously issued void tax certificates. Quillens suggests that if the City is required to buy into and hold property at a tax sale, and the City fails to transfer the tax certificate or foreclose the right of redemption while the certificate is valid, the unpaid taxes secured by the certificate are satisfied and cannot be collected in a subsequent tax sale.

Conversely, Parker argues that the Court of Special Appeals correctly dismissed Quillens' appeal in her case; she asserts that the court was correct because the appeal was not taken from a final judgment, which in the case of a tax lien foreclosure case, is the order foreclosing the right of redemption. Likewise, the City contends that Quillens' first notice of appeal was not timely because it did not result from a final judgment, and as such, it did not remove jurisdiction from the Circuit Court to enter the order foreclosing the right of redemption in the City properties. Parker and the City also argue that Quillens' failure to pay the delinquent taxes prohib-

its his right to challenge the tax sales under *Canaj,* and that the tax sales were valid because the unpaid taxes remained liens on the properties after the prior tax certificates became void.

### Finality and Right to Appeal

Quillens noted an appeal to the Court of Special Appeals in both the Parker and City cases on September 21, 2005. Subsequently, the Circuit Court issued an order foreclosing the right of redemption in the City properties on October 12, 2005, from which Quillens filed an amended notice of appeal. Quillens asserts that the original notice of appeal filed was timely and that the Court of Special Appeals erred in dismissing his appeal in the Parker case. Further, with respect to the City cases, Quillens argues that the original notice of appeal divested the Circuit Court of jurisdiction to enter an order foreclosing the right of redemption for the City properties.

It is well settled that the right of appeal is statutory. *Pack Shack, Inc. v. Howard County,* 371 Md. 243, 247, 808 A.2d 795, 797 (2002); *Prince George's County v. Beretta U.S.A. Corp.,* 358 Md. 166, 173, 747 A.2d 647, 651 (2000); *Gisriel v. Ocean City Elections Bd.,* 345 Md. 477, 489, 693 A.2d 757, 763 (1997). Section 12–301 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2001 Repl. Vol.), provides that "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." Thus, an appeal generally must be taken from a final judgment; the decision must be "so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." *Cant v. Bartlett,* 292 Md. 611, 614, 440 A.2d 388, 389 (1982); *Peat, Marwick, Mitchell & Co. v. Los Angeles Rams Football Co.,* 284 Md. 86, 91, 394 A.2d 801, 804 (1978).

 The final appealable order in a tax sale proceeding is the decree foreclosing the right of redemption. According to Section 14–844 of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.), entitled "Final Order," "[a]fter the time limit set in the order of publication and in the summons expires, the court shall enter judgment foreclosing the right of redemption. An interlocutory order is not necessary. *The judgment is final and conclusive on the defendants.*" (emphasis added). We explicated that the final order in a tax sale proceeding is the order foreclosing the right of redemption in *Scheve v. Shudder, Inc.,* 328 Md. 363, 614 A.2d 582 (1992), in which we referred to Section 14–844:

> In addition, our prior interpretation of the tax sale statute also indicates that no additional steps are required to enter a final judgment under § 14–844 beyond those set out in the text of the tax sale statute.
>
> \* \* \*
>
> The literal terms that the legislature used in § 14–844 do not encompass the Scheves' suggested "second step." A complaint under Title 14 must include the certificate of tax sale, an affidavit of a title search, and requests to serve process and for the court to issue an order of publication. After the purchaser files the complaint and meets all the tax sale statute's requirements, § 14–844 provides that when the prerequisite time period expires, a time period set into motion only through filing the complaint, a judgment will be entered. There is no mention of an additional prerequisite step of reaffirming the tax sale purchaser's desire to proceed.
>
> \* \* \*
>
> Permitting a circuit court to enter a final order under § 14–844 after the time period set forth in the purchaser's notice to the owner is true to both the statutory language and the policy of encouraging the foreclosure of redemptive rights at tax sales.

*Id.* at 373–74, 614 A.2d at 587–88 (citations omitted).

Quillens, nevertheless, argues that the August 30, 2005 orders establishing the validity of the tax certificates in the

Parker case and setting the redemption amounts for the City properties were appealable, citing *Scheve v. McPherson,* 44 Md.App. 398, 408 A.2d 1071 (1979), and *Kasdon v. Westbury, Inc.,* 259 Md. 222, 269 A.2d 625 (1970), for the proposition that appeals are permitted in tax sale proceedings before there is a final judgment foreclosing the right of redemption.

■ In *Scheve,* purchasers at a tax sale filed a complaint to foreclose the right of redemption in twelve parcels of land. Two days before the deadline to redeem the property, the owners of one of the properties contacted the purchasers' attorney and informed him that they intended to redeem one of the properties. The owners, however, failed to act to redeem the property, and the circuit court entered a final decree foreclosing the right of redemption in the property. Subsequently, the owners' petition to set aside the foreclosure was granted, from which the purchasers appealed. The Court of Special Appeals concluded that the purchasers could appeal the order reopening the judgment, noting that the order finally and conclusively determined the rights of the parties:

> The purpose and effect of striking the December decree, therefore, was to reinstate appellees' right to redeem the property, a right that had been terminated by the stricken decree. The March order clearly represented a determination by the court that appellees were entitled to redeem the property, that that right should not be foreclosed, and that, if appellees followed the statutory procedure for redemption, they would be entitled to own and possess the property to the exclusion of appellants.
>
> * * *
>
> The mere striking of the December decree, reviving a right of redemption that could then be exercised merely by paying the amounts fixed by the court, was the one and final act that adjudicated the rights of the parties and, save for appellate review, terminated the justiciable controversy among them. It therefore constituted a final and appealable order.

*Scheve,* 44 Md.App. at 403–04, 408 A.2d at 1075. *Scheve* is distinguishable from the case *sub judice* because in *Scheve,* the appeal was filed by certificate holders whose opportunity for appellate review of the striking of their judgment of foreclosure could have languished in a legal limbo were that order held to be interlocutory. In the instant case, Quillens appealed from the Circuit Court's rejection of his jurisdictional defense, thus permitting the action to foreclose the right of redemption to proceed, which would constitute the final and appealable order in the Parker or City cases.

In *Kasdon,* a tax sale purchaser of twelve parcels of land belonging to Westbury, Inc. filed twelve petitions to foreclose the rights of redemption on the properties, and the property owner filed a petition to redeem and fix the amount necessary for redemption. Subsequently, the purchaser filed an answer to the petition to fix costs necessary for redemption and requested a hearing, claiming that the redemption amount was approximately $400 per property. Without notice to any party, the judge entered an order fixing the redemption amount at approximately $300 per property; the purchaser appealed the denial of his request for a hearing to set the redemption amount. Without specifically addressing any jurisdictional issue, we considered the merits of the appeal, noting that the trial judge erred in setting the redemption amount without conducting a hearing:

> There can be no doubt that Kasdon is entitled to be reimbursed for necessary title searches "for each property," except that upon "proof that the search was unusually difficult ... (the court) may allow an amount not exceeding $25 for each search." He is entitled, also, among other things, to be reimbursed for the "actual attorneys's fee, not to exceed the sum of $100." It hardly needs saying that the trial judge ought to hear what the certificate holder has to offer in this regard before fixing the amount.
>
> \* \* \*
>
> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality

is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... The notice must be of such nature as reasonably to convey the required information, ... and it must afford a reasonable time for those interested to make their appearance."

We made the further observation "that denying ... [the appellant] an opportunity to be heard was contrary to the provisions of Rule (7)(e)(1) of the Local Rules of the Circuit Court for Montgomery County."

*Kasdon,* 259 Md. at 226–27, 269 A.2d at 627–28 (citations omitted), quoting *Madaio v. Madaio,* 256 Md. 80, 83–84, 259 A.2d 524, 527 (1969), quoting in turn *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). *Kasdon,* however, also is distinguishable because in that case, the appeal was permitted after the trial court set the redemption amount and the property owner indicated his intention to redeem, so that there was no further action for the trial court to take; ergo, finality.

Furthermore, the Circuit Court's August 30, 2005 order in the Parker case contained an express provision stating that Parker could proceed with the case and obtain a final judgment foreclosing the right of redemption after submission of an affidavit of compliance with the statute. The orders filed in the City cases also stated that the City was permitted to proceed with foreclosure if the properties were not redeemed within thirty days of the orders. In this regard, we have held that when a trial court order does not intend to finally dispose of the case with an order, the order does not constitute an appealable final judgment. *See Makovi v. Sherwin–Williams Co.,* 311 Md. 278, 533 A.2d 1303 (1987), in which we considered whether an order granting summary judgment in favor of the employer in a wrongful discharge action, but with an express provision allowing the employee thirty days in which to file an amended complaint, was appealable, and we iterated that the appeal from the order granting summary judgment was pre-

mature because the order also contained a provision permitting the employee to file an amended complaint:

> If the circuit court's order of January 14, 1987, had not contained the provision for leave to file an amended complaint within thirty days, the January 14th order would have been final and appealable. Nevertheless, the express provision for amendment shows that the January 14th order granting summary judgment was not intended to finally dispose of the case; thus the order was not final and appealable.

*Id.* at 281, 533 A.2d at 1305 (emphasis added).

■ Thus, we hold that the Circuit Court's August 30, 2005 orders establishing the validity of the tax sale certificates in the Parker case and setting the redemption amount in the City cases were not appealable final judgments, so that the Court of Special Appeals was correct in dismissing the appeal in the Parker case. The Circuit Court, however, also subsequently issued a final order foreclosing the right of redemption in the City properties, from which Quillens filed an amended notice of appeal. Quillens argues, nevertheless, that the original, premature, notice of appeal divested the Circuit Court of jurisdiction to enter the order foreclosing the right of redemption in the City properties.

We have rejected Quillens' argument that a premature, let alone timely, notice of appeal divests a trial court of jurisdiction.[12] In *Makovi*, 311 Md. at 278, 533 A.2d at 1303, Makovi, an employee, filed a complaint against her employer, Sherman–Williams, alleging wrongful discharge. The circuit court granted summary judgment in favor of Sherman–Williams, but gave Makovi thirty days in which to file an amended

---

**12.** *See also* Md. Rule 8–202(c) ("In a civil action, when a timely motion is filed pursuant to Rule 2–532, 2–533, or 2–534, the notice of appeal shall be filed within 30 days after entry of (1) a notice withdrawing the motion pursuant to Rule 2–533 or disposing of a motion pursuant to Rule 2–532 or 2–534. A notice of appeal filed before the withdrawal or disposition of any of these motions does not deprive the trial court of jurisdiction to dispose of the motion.") (as amended October 31, 2002, effective Jan. 1, 2003).

complaint; Makovi, instead, filed a notice of appeal. Subsequently, the circuit court dismissed the action. Considering whether the appellate court possessed jurisdiction, we concluded that a premature notice of appeal does not obviate the jurisdiction of the trial court:

> Our cases have repeatedly pointed out that, when an order of appeal is filed before there is an appealable judgment, "the order of appeal is of no force and effect." *Blucher v. Ekstrom*, 309 Md. 458, 463, 524 A.2d 1235 (1987); *Parkington Apartments v. Cordish*, 296 Md. 143, 146, 460 A.2d 52 (1983); *Merlands Club v. Messall*, 238 Md. 359, 362-63, 208 A.2d 687 (1965). A "premature ... order of appeal would ... not confer appellate jurisdiction," *Md.—Nat'l Capital Park & Planning Comm'n v. Crawford*, 307 Md. 1, 38 n. 17, 511 A.2d 1079 (1986).

*Makovi*, 311 Md. at 282-83, 533 A.2d at 1305. As a result, we held that because "a premature order of appeal is of no force and effect, and confers no jurisdiction on the appellate court, it obviously does not divest the trial court of jurisdiction to enter final judgment in the case." *Id.*

Quillens, however, argues that *In re Emileigh F.*, 355 Md. 198, 733 A.2d 1103 (1999) and *County Commissioners of Carroll County v. Carroll Craft Retail, Inc.*, 384 Md. 23, 45, 862 A.2d 404 (2004), support the conclusion that the trial court's jurisdiction was divested by the original notice of appeal; he is wrong in his assertion. In *In re Emileigh F.*, a juvenile court adjudicated Emileigh F. a Child In Need of Assistance (CINA), committed her to the Department of Health and Human Services, and placed her in the custody of her maternal grandmother. After an evidentiary hearing, the court entered a final judgment ordering that custody of Emileigh F. be awarded to her father, from which her mother noted an appeal. During the pendency of the appeal, the juvenile court, upon motion of the DHHS, closed the case, concluding that Emileigh F. no longer fit the description of a CINA. On appeal, we held that the juvenile court improperly closed the case because once the appeal was pending, the trial court should no longer act with regard to matters relating to

or affecting the subject matter of the appellate proceeding. *In re Emileigh F.*, 355 Md. at 203–04, 733 A.2d at 1105. As Judge Irma S. Raker, writing for the Court in *In re Emileigh F.*, stated, "[a]fter an appeal is filed, a trial court may not act to frustrate the action of an appellate court," and emphasized that this Court has "consistently taken the view that, when an appeal is taken, the trial court may continue to act with reference to matters not related to the subject matter of, or matters not affecting, the appellate proceeding." *Id.* at 202, 203, 733 A.2d at 1105, quoting *State v. Peterson*, 315 Md. 73, 80, 553 A.2d 672, 676 (1989).

Further, *Carroll Craft Retail* involved an action brought by Carroll County against the operator of Love Craft to enforce a zoning ordinance prohibiting adult entertainment businesses in certain locations. The district court entered a permanent injunction against the operator of the store; after a motion to alter or amend the judgment was denied, an appeal was filed in the circuit court in addition to a declaratory judgment action. After a hearing, the circuit court reversed the district court's decision regarding the injunction and reserved ruling on the declaratory judgment case. The County appealed the final judgment reversing the district court to the Court of Special Appeals; during the pendency of the appeal, the circuit court dismissed the declaratory judgment action. Addressing the circuit court's dismissal, we stated that once the appeal in the injunction action was pending, even if it was filed in the wrong court, "the Circuit Court was certainly prohibited from exercising its jurisdiction in any way that would affect the subject matter of the appeal or appellate proceeding." *Carroll Craft Retail, Inc.*, 384 Md. at 45, 862 A.2d at 418.

Neither *Carroll Craft Retail* nor *In re Emileigh F.* involved a premature notice of appeal, but both involved an appeal from a final judgment, which inhibited the circuit court from exercising its jurisdiction in a way that would affect the subject matter of the appeal or appellate proceeding. *Carroll Craft Retail, Inc.*, 384 Md. at 45, 862 A.2d at 418; *In re Emileigh F.*, 355 Md. at 203, 733 A.2d at 1105.

In the City cases, Quillens' first notice of appeal was premature and therefore, the Circuit Court's jurisdiction was not obviated by the appeal; thus, the Circuit Court could enter the final judgment foreclosing the right of redemption in the City properties.

## Payment of Taxes

■ Because Quillens did file a timely amended notice of appeal from the foreclosure of the right to redeem the City's properties, we will entertain Quillens' argument that he was not required to tender payment of all of the deficient taxes in order to challenge the validity of the subsequent tax sale proceedings.[13] Quillens contends that our recent decision in

---

**13.** At oral argument before this Court, Quillens' counsel indicated that "some of the taxes for some of the years were paid" by Quillens. Apparently, Quillens paid the real property taxes during Fiscal Years 1995 and 1996 on 2303 McCulloh Street, during Fiscal Years 1994, 1995, and 1996 on 2305 McCulloh Street, during Fiscal Year 1996 on 2307 McCulloh Street, and during Fiscal Years 1995, 1996, and 1997 on 2309 McCulloh Street. Quillens also paid the real property taxes for Fiscal Years 1995, 1996, and 1997 on both of the properties located at 2301 and 2311 McCulloh Street. To the extent that Quillens is asserting that he paid some of the taxes which were due on the properties for the years which became the basis for the tax sales, the record does not clearly support this. The record does, however, contain certified copies of real property tax levies from Baltimore City, indicating that with respect to 2301 McCulloh Street, $303.65 was paid towards the tax deficiency from Fiscal Year 1994 on May 27, 1995, and that on May 19, 2001, $282.48 was paid towards the tax deficiency from Fiscal Year 1998, $242.80 was paid towards the tax deficiency from Fiscal Year 1999, and $239.09 was paid towards the tax deficiency from Fiscal Year 2000.

To the extent that Quillens was disputing the amount of unpaid taxes and challenging the amount required for redemption, there were procedures wherein he could have filed a Petition to Redeem and challenge the amount of deficient taxes. *See* Maryland Code (1986, 2001 Repl. Vol.), Section 14–829 of the Tax–Property Article ("(a) *Application to court to fix amount due.*—If the property is redeemed after an action to foreclose the right of redemption is instituted and there is any dispute regarding redemption, the person redeeming may apply to the court before which the action is pending to fix the amount necessary for redemption in accordance with the provisions of this subtitle. (b) *Accepting money without court order.*—Except as provided in subsection (c) of this section, the collector may accept money for redemption without an order of court. (c) *Court order required where amount*

*Canaj, Inc. v. Baker and Division Phase III,* 391 Md. at 374, 893 A.2d at 1067, is not applicable because, as he argues, *Canaj* only applies when a party is seeking affirmative post-foreclosure relief invoking the court's general equity jurisdiction; whereas Quillens argues that he was challenging the jurisdiction of the Circuit Court by asserting that the tax certificates issued were invalid.

In *Canaj,* the owner of fourteen properties located in Baltimore City, Canaj, failed to pay its real property taxes, and the City attempted to sell the properties at a tax sale. Baker purchased the properties and filed complaints seeking to foreclose Canaj's right of redemption, which the circuit court ordered. Canaj filed a motion seeking to vacate the judgments based on allegations of fraud, mistake or irregularity; the court denied the motions, and on appeal, we affirmed. The first issue we considered was whether, in order to challenge a tax sale, the individual had to pay the overdue taxes. We determined that he did, stating:

> If a delinquent taxpayer can find a way to overturn a tax sale without paying the delinquent taxes, the delinquent taxpayer will never redeem. It is for this reason that the general rule is that in order to challenge a tax sale, the payment of taxes in arrears is a condition precedent. It was not met in the case at bar (at one point prior to the judgments, appellant appeared to question the computation of taxes but not that some amount was due. That issue was abandoned and not raised in the case before us.).

> The case law that seems to support the right of a taxpayer to proffer a sum (instead of paying it) only relates (if it applies at all) to claims that the purchase price at the tax sale was inadequate. *It does not change the requirement*

---

*disputed.*—If there is any dispute regarding redemption, the collector shall accept no money for redemption unless and until a certified copy of the order of court fixing the amount necessary for redemption is filed with the collector."). Quillens, however, did not take advantage of such procedures.

*that in order to challenge the holding of a tax sale, the taxes must be paid as a condition precedent.*

\* \* \*

By attacking the sale procedure in a post-judgment motion to vacate, instead of paying the taxes and charges which it would have been required to do in order to redeem prior to judgment, the taxpayer appears to be seeking to have the title of the property revert back to the delinquent taxpayer without having to ever redeem by paying the overdue and due taxes.

\* \* \*

*We continue to hold that in order to challenge the foreclosure of the equity of redemption in a tax sale, the taxes and other relevant charges acknowledged to be due, either prior to the challenge or simultaneously with it, must, as a condition precedent, be paid.* Appellant has not contested the fact that taxes are owed, or in this appeal, the amounts. There is no issue as to his obligation to pay the taxes. If we were to overrule our cases holding that payment is first required, the City would be left where it was before the tax sale. The public would be burdened perpetually with the problems created by the thousands of abandoned properties, which the delinquent owners would be unlikely to ever pay taxes on or ever to rehabilitate.

*Canaj,* 391 Md. at 385 n. 6, 382–88, 893 A.2d at 1073–74 n. 6, 1075, 1080 (emphasis added).

The *Canaj* holding applies, by its own terms, to the present case. Quillens is trying to skirt this by saying that he is challenging the jurisdiction of the Circuit Court; in effect, by challenging the jurisdiction of the Circuit Court, however, Quillens is seeking post-foreclosure affirmative relief because he is seeking to have the tax sale and the order foreclosing his right of redemption in the City properties set aside. In light of our opinion in *Canaj,* a property owner must tender all of the deficient real property taxes before he can challenge the validity of a tax sale, which Quillens has failed to do.

### Void Certificate

 In the Parker case, upon remand, the Circuit Court may be called upon to determine if the tax amounts representing unpaid taxes secured by prior void tax certificates should be included as part of a subsequent tax sale and later tax certificates issued thereon. We shall, for the Circuit Court's guidance, address this question. Quillens argues that the tax amounts representing taxes secured by void tax certificates can not be included because when the tax certificates become void after they are not exercised within two years of the date of issuance, the City loses the right to recover the unpaid taxes secured thereunder.

In this respect, there are three components of the tax sale statute: taxes, liens, and tax certificates. "Tax" is defined as "any tax, or charge of any kind due to the State or any of its political subdivisions, or to any other taxing agency, that by law is a lien against the real property on which it is imposed or assessed." Section 14–801(c)(1) of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.). Further, Section 14–804(a) of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.), states that "[a]ll unpaid taxes on real property shall be, until paid, liens on the real property in respect to which they are imposed." Therefore, unpaid taxes constitute liens on the property upon which they are assessed until they are paid.[14]

---

**14.** *See Lippert v. Jung,* 366 Md. 221, 239–40, 783 A.2d 206, 216–17 (2001) (noting that the power to tax in Maryland derived from the power granted to Lord Baltimore by the English King to collect taxes, and to that end, sell property if the taxes are not paid); *Dampman v. Litzau,* 261 Md. 196, 202, 274 A.2d 347, 350 (1971) (stating courts acting under the tax sale statute act with a special and limited jurisdiction for the purpose of decreeing marketable title to property); *Liquor Dealers Credit Control, Inc. v. Comptroller,* 241 Md. 656, 662, 217 A.2d 571, 574 (1966) (stating that statute authorizing sale of real property for payment of taxes "had the effect of also making the taxes a lien on the realty"); *Gathwright v. Mayor & City Council of Baltimore,* 181 Md. 362, 365, 30 A.2d 252, 254 (1943) ("It is apparent from the terms of the [Baltimore City Tax Sale] Act that it is a proceeding to enforce payment of taxes due and in arrear on property by selling the property and applying so much of the proceeds as is necessary to pay all taxes and

With respect to tax certificates, Section 14–833 of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.), declares that if a complaint to foreclose the right of redemption is not initiated within two years of the date of issuance of the tax certificate, "[t]he certificate is void" and "any right, title, and interest of the holder of the certificate of sale, in the property sold shall cease."

■ It is a "settled principle that laws enacted for the collection of general taxes must be interpreted with very great liberality; consequently, construction should not be undertaken with an eye to defeating the legislation, but with both eyes focused on giving it force, if reasonably possible." *Surratts Associates v. Prince George's County*, 286 Md. 555, 566, 408 A.2d 1323, 1329 (1979); *Casey Development Corp. v. Montgomery County*, 212 Md. 138, 147, 129 A.2d 63, 68 (1957). The plain language of the tax sale statute voids only the tax certificate issued to the holder, not the tax lien for the benefit of the taxing authority. The General Assembly has unambiguously stated that if a tax certificate holder does not initiate a proceeding to foreclosure the right of redemption on a property within two years from the date of issuance of the certificate, the certificate, *only*, becomes void; the underlying unpaid taxes constituting a lien on the property are unaffected. When the City is required to buy in and hold property at a tax sale pursuant to Section 14–824 of the Tax–Property Article, Maryland Code (1986, 2001 Repl.Vol.), and does not file a

public dues and costs."); *Baltimore County Comm'rs v. Hunter*, 141 Md. 133, 138, 118 A. 149, 151 (1922) ("The object of the statute before us is to enforce the payment of taxes by sale of the property of delinquent owners."); *Fulton v. Nicholson*, 7 Md. 104, 107 (1854) (remarking that taxes due to Baltimore County were a lien on the property because the statute authorized the sale of land "duly levied" with a tax); *Eschbach v. Pitts*, 6 Md. 71, 76–77 (1854) ("I regard, therefore, the tax as a lien on the realty; as much so as though it were a judgment rendered in a court of law.... It is this right, however, to make the debt out of the land, which creates the lien."); *Dallam v. Oliver's Ex'rs*, 3 Gill 445 (1845) (stating unpaid real property taxes only constitute a lien on the land when there is insufficient personal property to satisfy the amount of taxes due).

complaint to foreclose the right of redemption, the taxes remain unpaid and can be included in subsequent tax sales.

Accordingly, we hold that the Circuit Court's orders rejecting Quillens' challenge to the validity of the tax certificates were not appealable final judgments. We also hold that Quillens was required to tender payment for the unpaid real property taxes in order to challenge the tax sales.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONERS.*